Filed 6/28/24  In re Aurora C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re AURORA C., a Person Coming Under the Juvenile Court Law. | B326310 |
| | (Los Angeles County Super. Ct. No. 19CCJP00167A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| HECTOR O., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tara Newman, Judge.  Conditionally affirmed and remanded with directions.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Presumed father Hector O. appeals from the juvenile court's order denying his request at the Welfare and Institutions Code section 366.3 permanency plan review hearing that minor Aurora C. be returned to his custody.[1]  We conclude the juvenile court did not abuse its discretion by denying Hector's request while continuing family reunification services and conjoint counseling for him and Aurora.  Hector also contends the Los Angeles County Department of Children and Family Services (Department) failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.  The Department concedes the issue.  Therefore, we conditionally affirm the juvenile court's order and remand for full compliance with ICWA's inquiry and notice provisions.

## FACTUAL AND PROCEDURAL BACKGROUND

Minor Aurora (born 2012) is the daughter of Jacqueline C., and has two presumed fathers:  (1) her biological father Jonathan S., and (2) appellant Hector O., the biological father of Aurora's

_____

[1]     All undesignated statutory references are to the Welfare and Institutions Code.

2

half-sisters I.O. (born 2013), L.C. (born 2018), and infant Mina (not a subject of the underlying proceedings). Hector testified he considered Aurora his daughter, and she and Jacqueline began living with him in 2012.

A.   *The November 2018 Referral and January 2019 Dependency Petition*

In November 2018, the Department received a referral alleging general neglect of L.C. and risk of harm to Aurora and I.O. The referral stated Jacqueline had a positive toxicology screen for marijuana and methamphetamine. L.C. was born at home, and Jacqueline had no prenatal care. Jacqueline reported Hector had become very controlling two years earlier and stated she had ended her relationship with him. On January 2, 2019, the juvenile court authorized a removal order for Aurora and her half-sisters.[2]

On January 9, 2019, the Department filed a dependency petition on behalf of Aurora, I.O. and L.C., alleging under section 300, subdivisions (a) and (b)(1), that Jacqueline and Hector had a history of violent altercations in the presence of the children, and Jacqueline failed to protect the children from harm. The petition also alleged under subdivision (b)(1), that L.C. was born with a positive toxicology screen for amphetamines and THC, Jacqueline had a history of drug use, Hector had a history of substance abuse and was a current abuser of marijuana, and

---

[2]   Before having children with Jonathan and Hector, Jacqueline was involved in another dependency proceeding that resulted in her parental rights being terminated as to her son Thomas C. (born 2006) in 2010.

Aurora's biological father Jonathan had a criminal history that rendered him incapable of caring for Aurora.

On January 10, 2019, the juvenile court detained the three children from the parents. The court found Jonathan was Aurora's presumed father and Hector was I.O.'s and L.C.'s presumed father. The court ordered monitored visits for Hector, separate from Jacqueline. Jacqueline and Jonathan denied Indian ancestry and the court found no reason to know Aurora was an Indian child.

B. *The Jurisdiction and Disposition Report and Hearings*

In January 2019, Hector visited every Saturday for two hours. Hector was on time, attentive, interacted well with the foster mother and the children, and no concerns regarding the visits were noted. The children appeared happy to see Hector, who also contacted the children daily. In February 2019, Aurora denied feeling afraid of Jacqueline or Hector. The same month Hector enrolled in Project Fatherhood and completed six sessions.

On March 12, 2019, the juvenile court sustained the petition as to Hector, Jonathan, and Jacqueline under counts (b)-1, (b)-2, (b)-3, (b)-4, and (b)-5. The disposition was continued for the family reunification services bypass recommendation and paternity hearing. Hector thereafter consistently visited the children every Saturday and was on time. Hector interacted well with the children, and the children appeared happy during visits. Hector dedicated the first hour to the older children, Aurora and I.O., and the last hour to the baby, L.C. He did not appear to be under the influence of drugs or alcohol. The foster mother reported no concerns regarding the visits.

4

In April 2019, the court found Hector was Aurora's second presumed father and ordered all three children removed from the parents, over Hector's objection, with family reunification services for Hector as to all three children and Jonathan as to Aurora. Hector agreed to a case plan that included domestic violence classes and random drug testing. Jacqueline was denied reunification services. The court ordered monitored visits for Hector a minimum of three times a week for three hours each visit.

C.     *Review Hearings and Section 361.3 Placement Proceedings*

As detailed below, Hector generally complied with his case plan and maintained consistent visitation with his daughters, but the juvenile court declined to place Aurora with him after she expressed unwillingness to be reunited with Hector.

1.     *Six-month review hearing*

At the section 366.21, subdivision (e), six-month review hearing in November 2019, the juvenile court found Hector's case plan progress was substantial and continued reunification services. Hector regularly visited the three children for one and a half hours on Saturdays. He never appeared under the influence of drugs or alcohol. I.O. and Aurora reported they enjoyed the visits. Counsel for Jonathan asked the court to order that Jonathan's mother Patricia S. (Aurora's biological paternal grandmother) be evaluated for a potential relative placement as to Aurora. Counsel further requested a section 361.3 hearing because the Department had been resistant to removing Aurora

from Hector, even though Jonathan had reunification services.[3] Aurora's counsel requested a hearing before moving the children because Aurora was closely bonded with her siblings and wanted to stay with them.  Hector requested a 361.3 hearing also be conducted for his mother Vilma T. a/k/a/ Maria T. for all three children, so the siblings could stay together. The court ordered the Department to assess Patricia and Vilma for placement and set the matter for a contested section 361.3 hearing.

> 2.      *The section 361.3 hearing and the section 366.21 12-month review hearing*

In December 2019, the juvenile court initiated the section 361.3 hearing.  The court ordered Patricia to have unmonitored visits and weekend overnight visits with Aurora and further ordered the Department to facilitate Patricia spending time with Aurora.[4]  In January 2020, the court continued the section 361.3 hearing and ordered the Department to continue to assess relatives for placement.

In March 2020, Hector remained in full compliance with his visits and did not miss any visits.  As before, he did not appear

---

[3]      Section 361.3, in relevant part, states as follows:  "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative."

[4]      The juvenile court also ordered the Department to assess maternal grandmother Aida for placement.  Aida filed a section 388 petition seeking custody of Aurora.  Aida subsequently passed away, and the court denied her section 388 petition as moot.

under the influence of alcohol or drugs, and I.O. and Aurora enjoyed the visits. But Hector was in minimal compliance with his case plan and tested positive for marijuana once during this reporting period.

On March 10, 2020, the court continued the section 366.21, subdivision (f), 12-month review hearing as to Hector and terminated reunification services for Jonathan. The court continued the scheduled section 361.3 hearing. In May 2020, the court again continued the 12-month review hearing and section 361.3 hearing.

Hector had no monitored visits with the children between April and September 2020 because the foster mother had concerns regarding COVID-19. But Hector had monitored phone and video calls with the children.

On September 24, 2020, the court held the section 361.3 hearing as to Patricia for Aurora and Vilma for all minors. The children's counsel and Hector's counsel objected to the minors being placed separately. The court continued the 12-month review hearing and ordered unmonitored visits in a neutral setting for Hector, with Department discretion to liberalize the visits. The court ordered the Department to: follow up with a visitation schedule for Hector and Jacqueline within two weeks and ensure the court's orders for in-person visits for the parents were being followed; follow up with Hector to address issues raised in Vilma's assessment (as explained below); and assess the appropriateness of a section 211 housing assistance referral for Hector so that he could begin overnight visits.[5]

---

[5] Section 211, subdivision (b), provides: "Notwithstanding any other law, a person under the age of 16 years shall not be

A Department social worker subsequently instructed Hector that Jacqueline was not to be present during his visits. She warned Hector that if his contact with the children was negative or if he allowed Jacqueline to have access to the children during visits, his unmonitored visits would be revoked.

Hector had two unmonitored visits in October 2020, and video calls with the children at least two to three times a week. In November 2020, the Department reported Hector continued to have stable housing and employment and complied with court-ordered services.

On November 4, 2020, the court continued the section 361.3 hearing and the 12-month review hearing. The court ordered the Department to make unannounced home visits and follow up on the section 211 referral and process as to Hector. The court ordered Hector to have overnight visits once he had appropriate housing and ordered Aurora to continue having visits with her grandparents (i.e., Patricia and her husband).

On November 5, 2020, the court found Hector was in substantial compliance with his case plan, referred him to the section 211 housing office, and ordered the Department had discretion to send Aurora and her half-sisters on an extended visit with Hector after he secured appropriate housing.

3. *Eighteen-month review hearing and section 361.3 hearing placing Aurora with Patricia*

As of February 2021, Hector had had no visits with the children since the November 2020 hearing. Although the

housed in any facility under the jurisdiction of the Department of Corrections and Rehabilitation."

Department instructed him how important in-person visits were to properly assess his readiness to reunify with the children, the foster mother remained concerned about COVID-19 and Hector tested positive for COVID-19 in December 2020 so she had not allowed visits. He still had video sessions with the children at least twice a week.

Because Hector had completed no additional in-person visits, the Department was unable to assess his interactions with the children or to conduct unannounced home visits. The Department also expressed concern that Hector was residing in Vilma's home. The Department had recommended the court deny placement of the children with Vilma because of her previous involvement with the Department, where she denied knowledge of sexual abuse by the paternal grandfather occurring in her home over a period of years, including new allegations in 2017 involving Hector's sister and her minor children. Hector was also named in the sustained petition as a perpetrator of sexual abuse against his sister.

In February 2021, the juvenile court held the section 361.3 hearing as to Patricia and ordered Aurora placed with her. The court ordered the Department to ensure Aurora had frequent sibling visits and to follow up with Patricia to work out a schedule for Hector's visits. It continued the 18-month review hearing and ordered the Department to work with Hector to resolve his housing status to facilitate overnight visits.

In April 2021, the Department reported Hector had no visits since February due to Patricia's COVID-19 concerns and her surgery in March. But Hector maintained consistent phone sessions with the children at least three times a week. Hector then resumed in-person visits with Aurora and her sisters every

9

Saturday.  Aurora called Hector "dad" and appeared to enjoy the visits.  Hector and Aurora appeared to have a strong bond.  Aurora stated she wanted to have overnight visits with Hector and "sleepovers" with her sisters.  But Patricia opposed such visits due to Hector's alleged history of sexual abuse.  The Department social worker told Patricia that Aurora must be allowed to participate in overnight visits if Aurora so preferred.  The court continued the 18-month review hearing to follow up on Hector's housing needs.  The court ordered the Department to ensure in-person unmonitored visits between Aurora and Hector were occurring.  The Department was ordered to assist Hector with section 211 housing, with discretion for the Department to release the children to Hector if barriers to return were resolved.

In May 2021, Hector resumed unmonitored visits with I.O. and L.C.  Hector had consistent phone sessions with the children at least once a week.  Patricia reported she was unsure Aurora wanted to attend in-person visits.  Aurora told the social worker she did not want to attend visits because Hector was not her "'dad.'"  Aurora said she wanted to see her sisters but not Hector.  Aurora denied being coerced by Patricia to say so, and stated she did not want to see Hector because he did not call her as often as Jonathan did.  She denied being afraid of Hector.  The social worker reminded Patricia that Hector's visits were court-ordered, but Patricia stated she could not force Aurora to attend.  The social worker reminded Patricia not to coerce Aurora into not participating in family visits and not to speak negatively about Hector to Aurora.

On June 17, 2021, the juvenile court held the 18-month review hearing, found Hector's case plan progress was substantial, and continued reunification services for Hector.  It

10

set a 24-month review hearing under section 366.25. The court ordered the Department to: ensure its section 211 housing order remained in effect; work with Hector to resolve any barriers for releasing the children to him; facilitate Hector's visits to include overnight visits; and ensure in-person visits for Hector. The court ordered the Department to arrange a child and family team meeting regarding Hector's housing, ordered no one to discourage visits for Hector, and ordered Patricia not to interfere with court orders. The court ordered the Department to address any issues with visits, and meet with Patricia to address expectations for facilitating visits between Hector and Aurora.

In July 2021, Hector began overnight weekend visits with I.O. and L.C., which were positive.

4. *At the 24-month review hearing, Hector regains custody of Aurora's two half-sisters but not Aurora*

In September 2021, the juvenile court continued the 24-month subsequent review hearing at Hector's request. The court ordered the Department to initiate visits between Aurora and her sisters and prepare a written visitation schedule. Hector was to be included so his monitored visits with Aurora could take place during the sibling visits. In November 2021, the juvenile court found Hector was approved for housing through the PATH program and twice continued the 24-month review hearing. The court ordered the Department to assess Hector's home, and ordered Aurora and her half-sisters to be placed on an extended visit with Hector pending the next hearing date. The court ordered the Department to make best efforts to use the extended visit to initiate the transition for Aurora from Patricia's home to Hector's home.

11

Aurora agreed to visit but expressed that she did not wish to participate in an extended visit with Hector and her sisters. The Department strongly advised Patricia to follow through with Aurora's mental health assessment and not to speak ill about Hector in Aurora's presence. At an unannounced visit in November 2021, Hector's home was deemed to be appropriate for the children and well-supplied, the children were properly dressed for the weather, and they reported eating three meals a day and brushing their teeth daily. Hector was late and had alcohol on his breath on one occasion when picking up the children; he stated he had one beer and agreed to an on-demand drug test, which was negative. I.O. and L.C. disclosed Hector spanked L.C. with an open hand more than once as discipline for not following directions; Hector denied doing so.[6]

On December 3, 2021, the juvenile court held the 24-month review hearing. Aurora testified that she called both Hector and Jonathan "dad," she could not remember the last time she saw Jonathan, and she wanted to keep living with Patricia "because she's kind" and "doesn't . . . make me feel nervous." She further testified she only wanted to visit with her sisters and Hector, but not live with them, and was scared she might say the wrong thing at the house and make her sisters mad. Aurora used to have nightmares but they stopped when she came to her grandmother's house. Aurora claimed she never lived with Hector.

---

[6] On November 16, 2021, the juvenile court admitted evidence for the 24-month review hearing but continued the hearing so that Aurora could be present in person.

12

The court found return of Aurora to Hector would create a substantial risk of detriment to Aurora, necessitating the current placement with Patricia. The court terminated reunification services for the parents, ordered permanent placement services for Aurora, and set a hearing under section 366.26. The court ordered that Hector would continue having unmonitored and overnight visits with Aurora and that sibling visits were to continue.

D.     *The Court Grants Section 388 Petitions, Reinstating Hector's Family Reunification Services*

Subsequently, Hector's and Aurora's counsel each filed section 388 petitions for modification of prior orders. Aurora's counsel requested the court take the section 366.26 hearing off calendar and grant Hector reunification services in the form of conjoint counseling with Aurora because Aurora enjoyed visits with Hector and her sisters and did not want to foreclose the possibility of reunifying with Hector. Hector requested an order returning Aurora to his custody or alternatively to reinstate reunification services because Aurora was bonded with Hector and with her half-sisters.

In May 2022, Hector reported Aurora visited every other weekend from Friday to Sunday. During these visits, she expressed to Hector that she did not want to return to Patricia's home. Aurora reported to the social worker that she wanted to continue overnight visits with Hector and her sisters but did not want to reunify. Hector stated Patricia did not allow Aurora to speak with him and reprimanded Aurora for calling him "'father.'" Hector did not believe it was true that Aurora did not want to live with him. Hector expressed concern that he would

13

not be allowed in Aurora's life if the Department was not involved, and the Department acknowledged that Patricia made it difficult for Aurora to visit Hector and her sisters. Patricia reported that visits were going well between Hector and Aurora. She stated it was Aurora's decision if she wanted to live with Hector, but did not think it would be safe due to Hector's history of alleged sexual abuse.

At the hearing on the section 388 motions on May 18, 2022, Hector argued that Aurora's sisters were thriving under his sole physical and legal custody, he was fully case-plan compliant, Hector and Aurora were visiting consistently, including overnight visits, and it was in Aurora's best interests to develop stronger bonds with her two sisters and Hector, rather than staying in a "toxic placement" where Patricia's interference with her visits and relationships was ongoing.

The court granted Hector's section 388 petition in part by reinstating Hector's reunification services. The court reasoned this was in Aurora's best interest because circumstances had changed, and Aurora was comfortable with Hector and wanted to reunify. The court ordered the Department to: provide reunification services to Aurora and Hector; provide individual counseling and conjoint counseling for Hector and Aurora; address any issues with Patricia; and create and implement a transition plan for Aurora's potential placement with Hector. The Department had discretion to allow extended visits for Hector with Aurora. The court also granted Aurora's section 388 petition, granted reunification services to Hector, and took the section 366.26 hearing off calendar.

E.    *The Court Denies Hector Custody but Orders Continued*
      *Reunification Services at the Section 366.3 Hearing*

In June and July 2022, Aurora had weekend visits with Hector and her sisters, and she appeared to have a strong bond with Hector. Her relationship with her grandparents in her placement remained positive. Hector consistently stated his interest in regaining custody of Aurora. He believed Aurora was coached by Patricia to not want to visit with him and that Aurora needed mental health services. Aurora indicated she wanted to remain with Hector while visiting him, but she would change her mind when at Patricia's home. Hector stated again that Patricia reprimanded Aurora for calling him "'father.'"

In August 2022, Aurora reported she saw Jacqueline during her last visit with Hector. Aurora stated she was nervous to see or talk to Hector because Aurora had disclosed to the Department that Hector and Jacqueline had a new baby, Mina. Aurora then refused to resume overnight visits and only wanted to talk with her sisters on the phone because Hector was "'not real family.'" Aurora further stated she would only visit at a park with her sisters going forward. Aurora denied being coached by Patricia to stop referring to Hector as her father. Patricia resisted scheduling phone calls in lieu of visits; the social worker reminded Patricia the calls were court ordered.

Aurora began receiving weekly individual therapy in September 2022, and collateral therapy sessions with Patricia. On several occasions, the therapist had to redirect Patricia not to involve herself in Aurora's private individual sessions. Aurora was uncomfortable and would not participate as usual when Patricia was present in her individual sessions.

15

In October 2022, Aurora had a visit with Hector and her sisters at a park. Before the visit, she expressed feeling nervous because she did not know how Hector was going to react because Aurora had disclosed news of her new baby sister to the Department. During the visit, Aurora appeared more at ease.

In November 2022, the Department reported Aurora continued to do well in her placement, and had a strong bond with both grandparents. Her grandparents ensured Aurora attended all necessary medical, dental, and psychological appointments, and Aurora felt safe and loved by them. Aurora consistently stated she wanted to be adopted by her grandparents, and worried when court hearings approached because she did not know what the judge would decide. Patricia was willing to transport Aurora to a park for visits to preserve Aurora's relationship with her sisters.

Hector remained open to visitation with Aurora and emphasized the importance of her maintaining a relationship with her younger sisters despite tensions between him and Patricia. Aurora's therapist reported Aurora expressed sadness and anxiety when she was not able to visit her sisters. Aurora reported she wanted to permanently reside with her grandparents. Aurora said she would feel sad and angry if asked to move because it was not her choice.

Hector believed Patricia reprimanded Aurora for wanting a relationship with him and stated Patricia refused his efforts to share custody. Aurora denied being reprimanded and stated she did not feel comfortable talking with Hector. Patricia stated Hector would engage Aurora in conversation after she said she did not want to talk.

In November 2022, the juvenile court continued the section 366.3 hearing so the Department could address its reasons for recommending no reunification services for Hector. The court observed Hector was more involved in Aurora's life than her biological father, Jonathan. It further noted that it did not understand the basis for the Department's recommendation given that Hector had complied with the case plan and the Department identified no specific safety risk to Aurora. The court also expressed concern regarding Patricia's interference with efforts to reunify Hector and Aurora.

On December 16, 2022, the Department reported Aurora continued to do well with her grandparents, had been attending mental health and tutoring services, and was improving her grades. Aurora continued to state she wished to reside permanently with her grandparents and said she would feel sad, angry, and worried if she had to leave them. Aurora refused to visit or have any communication with Hector and expressed feeling afraid of him. She said she wanted to remain in contact and have in-person visits with her sisters.

On January 10, 2023, the juvenile court proceeded with the permanency planning hearing, at which Aurora, Hector, and Patricia testified. Aurora, then 10 years old, had been living with her grandparents for two years and enjoyed living with them. Aurora described Hector as her "stepfather" and Jonathan as her "real dad." She testified she had three sisters who lived with Hector. Aurora indicated her choice was to live with Patricia because (1) she felt happy when the grandparents were home, and they paid for her private school; (2) Patricia cooked homemade meals; and (3) Patricia would help Aurora with her homework. She preferred to live with her grandmother instead of

17

Hector and her sisters. Aurora stated she would feel sad if she had to live with Hector and her sisters because that was not the choice she wanted to make. Aurora felt very strongly about her decision.

Aurora denied speaking to Patricia about Hector, whom she referred to by his first name. Aurora stated she would be sad if she could not visit her sisters. However, she did not want to spend the night with her sisters because she was the only person to help with her grandmother's food preparation business.

Hector testified he was currently not having visits with Aurora, and he last saw her before Thanksgiving. Hector did not have a written visitation schedule and the social worker had trouble figuring out what days Patricia would allow a visit. Patricia would say she would get back to the social worker but never did. Hector was also to have phone calls with Aurora, and during the last two phone calls, Patricia reprimanded Aurora for speaking with Hector. He only spoke briefly to Aurora during two phone calls over the past three or four months.

Patricia confirmed Aurora had been living with her since February 2021, and denied she was preventing court-ordered visits from occurring. She testified visits had not occurred because Aurora was unwilling to go and Hector had limited availability. The social worker would not force Aurora to go to visits if she was not willing. Hector wanted Aurora to be taken to his house, and Patricia was not available to drive the lengthy distance. She conceded the social worker occasionally offered to drive Aurora to visit with Hector. She denied reprimanding Aurora for speaking to Hector on the phone or prevented her from doing so. Patricia did not call Hector to set up visits because she did not think it was Aurora's obligation to ask for those visits.

Hector requested return of Aurora to his custody, and alternatively requested a finding of no reasonable services or visits and to set a review hearing in six months. Aurora's counsel requested the court continue the permanency planning review hearing and order conjoint counseling so Aurora could confront Hector about any concerns she had about their relationship. The Department requested the court terminate reunification services and set a 366.26 hearing. The Department requested the court not order conjoint therapy, not return Aurora to Hector, and find that reasonable services were provided.

The juvenile court found no reasonable services were provided because there had been no conjoint counseling; no visitation since the granting of Hector's section 388 petition; and Patricia interfered during Aurora's therapy and possibly coached Aurora against Hector. The court denied Hector's request that Aurora be returned to his custody without making findings specific to the denial, but it granted Hector extended reunification services for six months and ordered a new permanent plan of continuation of family reunification services. The court stated it appreciated Hector's "support and love of Aurora" and noted that guardianship rather than adoption might be more appropriate for Aurora if reunification with Hector was not going to occur. The court also observed that Patricia had "provided Aurora with a very positive home environment," was "an excellent grandmother," and that the court understood Aurora wished to stay there.

The court ordered the Department to ensure conjoint counseling between Hector and Aurora begin immediately, to facilitate visits for Hector with Aurora, and to provide a written visitation schedule to Hector and Jacqueline within five business

19

days, with continuing discretion to the Department to liberalize Hector's visits.

On January 11, 2023, Hector timely appealed the juvenile court's orders denying his request to have Aurora returned to his care or custody.

## DISCUSSION

A.    *Standard of Review and Governing Law*

"Although section 361.5, subdivision (a), generally limits family reunification services to a period not exceeding 18 months after the date a child was originally removed from the physical custody of the child's parent, nearly 30 years ago in *In re Marilyn H.* (1993) 5 Cal.4th 295, the Supreme Court held a parent may utilize the section 388 petition procedure to demonstrate circumstances have changed and additional reunification services would be in the child's best interest." (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1114-1115.) Additionally, "section 366.3, subdivisions (e) and (f), expressly authorize the juvenile court at postpermanent plan review hearings to order a second period of reunification services if it would be in the child's best interest to do so." (*Ibid.*; see § 366.3, subd. (f) [after a permanent plan is ordered, "[i]t shall be presumed that continued care is in the best interests of the child, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child."])

If a parent succeeds in obtaining additional reunification services after a successful 388 petition, review hearings are conducted pursuant to section 366.3, which governs dependency jurisdiction after an order for a permanent plan. (See *In re*

20

*Jacob P.* (2007) 157 Cal.App.4th 819, 829; *In re Malick T., supra,* 73 Cal.App.5th 1109; see also § 366.3, subds. (d)-(e).) At a section 366.3 review hearing, the best interest of the child standard is applied to determine whether return to the parent is appropriate, rather than the presumption during the initial reunification period that a child should be returned to a parent unless there is substantial risk of detriment. (See *In re Jacob P.,* at pp. 828-829; § 366.3, subds. (f), (h)(1).) "

We review the denial of a request to return a child to parental custody at a section 366.3 hearing for an abuse of discretion. (See *In re Jacob P., supra,* 157 Cal.App.4th at p. 832.) We will not disturb a trial court's discretionary decision on appeal """unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."" (*In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1456.)

B.      *The Juvenile Court Did Not Abuse Its Discretion in Denying Hector's Request for Return of Aurora to His Custody*

Hector argues the trial court erred in denying his request for custody of Aurora at the section 366.3 hearing because placement with him was in Aurora's best interest.[7] Hector argues he is better able to care for Aurora than Patricia, his home

_____

[7]      The Department argues we should deem Hector's arguments "waived" because his contention that the juvenile court erred is "conclusory" and "lacks cogent legal argument, relevant analysis, explanation of how the law applies to the case, or reasoned argument." We address Hector's arguments on the merits because they are not wholly lacking in reasoned argument.

is comfortable, well-equipped, and appropriate for children, with no risk factors present in his care, and Aurora would have the chance to reunite with her sisters by living with him. He further argues that, except for a short period in 2020 during the COVID-19 pandemic, he had monitored phone and video calls, in which he had positive in-person visits with Aurora, she enjoyed the visits, had a strong bond with him, and called him "'dad.'"

Although Aurora testified that she preferred to live with Patricia, Hector argues her preference alone does not determine her best interests. Hector contends Patricia influenced Aurora to refuse visits with him and to say that he was not her real father. In Hector's view this was because Patricia resented that her son Jonathan, Aurora's biological father, did not get custody.

Hector also argues he had positive visits with I.O. and L.C., including weekend overnights beginning in July 2021. In November 2021, when I.O. and L.C. were placed with Hector, Aurora began positive unmonitored visits with Hector and her sisters, which increased to every other weekend in May 2022. Aurora enjoyed the visits, became more comfortable with Hector, and told him she did not want to return to Patricia's home. Aurora also told the Department she wanted to continue overnight visits with Hector and her sisters (although she did not want to live with them). Hector testified that he did not believe Aurora did not want to live with him.

Given the juvenile court's finding that Patricia interfered with Aurora's therapy, possibly coached Aurora, and did not facilitate visits with Hector, Hector argues the court should have placed Aurora with him to facilitate conjoint counseling and other family reunification services, without the risk that Aurora's

relationship with him would continue to be negatively affected by Patricia.

As previously noted, there is no presumption a juvenile dependent will be returned to a parent at a section 366.3 hearing. (See *In re Jacob P., supra,* 157 Cal.App.4th at pp. 828-829; § 366.3, subd. (h)(1).)  At the time of the January 2023 hearing, Aurora had been in dependency care for four years and living with Patricia for two years.  Aurora was closely bonded with Patricia.  "To return to a presumption of return this late in the proceedings would be to ignore that relationship and the benefits of that placement." (*In re Jacob P.*, at p. 831.)  Further, although it is generally the case, "a parent's compliance with the case plan is not a guarantee the child will be returned to the parent."  (*Ibid.* [parental compliance with reunification services is a "separate question" from whether it is in a child's best interests to return to that parent].)

Here, the juvenile court recognized Hector's strengths as a parent and made clear it had serious concerns about Patricia's interference with Hector's relationship with Aurora.  But the court also determined Patricia "provided Aurora with a very positive home environment" for two years, was "an excellent grandmother," and the court understood Aurora wished to stay with her grandparents.  Although Hector had no criminal history and the Department identified no safety risk to Aurora, the Department expressed concern in February 2021 that Hector continued to reside with his mother Vilma, who was in denial about sexual abuse by the paternal grandfather, and that there was a sustained finding Hector was a perpetrator of sexual abuse against his sibling.

Throughout 2022, the Department reported that while Aurora enjoyed visits with Hector and her sisters, she consistently stated she wanted to reside with her grandparents and did not want to reunify with Hector. By January 2023, Aurora was again refusing visits with Hector and only wanted contact with her sisters. Her last visit with Hector was in November 2022. She reported she felt afraid of him. Aurora stated she wanted to live with Patricia, felt happy and grateful to be in her home and would feel angry and sad if asked to move to Hector's home. She had a strong bond with her grandparents, and repeatedly stated she wanted to be adopted by them. Her grandparents ensured all of Aurora's medical, dental, educational, and mental health needs were met, supported her education, and Patricia stated she could arrange for Aurora to remain in contact with her sisters through visits.

Under these circumstances, we cannot conclude the juvenile court abused its discretion when it denied Hector's request to return Aurora to his custody, while continuing reunification services and mandating conjoint counseling. The juvenile court's determination was not arbitrary, capricious, or patently absurd.

C.    *Conditional Affirmance and Remand for ICWA Compliance is Necessary*

1.    *ICWA and the duty of inquiry*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq.) set minimum federal standards a state court must follow before removing Indian children from family and placing them in foster care or adoptive homes. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 551; accord, *In re T.G.* (2020)

58 Cal.App.5th 275, 287; 25 U.S.C. § 1902.) The statute "authorizes states to provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA." (*In re T.G.,* at p. 288; see 25 U.S.C. § 1921.) ICWA permits tribes to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding. (See 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8.)

To ensure Indian tribes can exercise their rights in dependency proceedings, an investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided to the relevant tribes. (See § 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"].) "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W., supra,* 70 Cal.App.5th at p. 552; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

The duty to inquire "'begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.'" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; § 224.2, subds. (a)-(c).) The duty of inquiry also extends to the juvenile court, which is required to "ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c); see 25 C.F.R. § 23.107(a); *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.)

The Department's initial duty of "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b); see Cal. Rules of Court, rule 5.481(a)(1); *In re Y.W., supra,* 70 Cal.App.5th at pp. 551-552.)  ICWA and state law define "extended family member," if not separately defined by the law or custom of the Indian child's tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); see § 224.1, subd. (c).)

If the juvenile court or the Department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child" (§ 224.2, subd. (e); Cal. Rules of Court, rule 5.481(a)(4); *In re Y.W., supra,* 70 Cal.App.5th at p. 552), further inquiry requires interviewing, "as soon as practicable," extended family members, contacting the Bureau of Indian Affairs, and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility."  (§ 224.2, subd. (e), (e)(2)(C)); see also rule 5.481(a)(4).)

If the further inquiry "results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; see 25 U.S.C. § 1912(a); § 224.3, subd. (a) [notice under ICWA "shall be provided" if the court, social worker, or probation

26

officer "knows or has reason to know . . . that an Indian child is involved"].)

2. *Remand for ICWA compliance is required*

Hector argues, the Department concedes, and we agree that remand is necessary because four paternal extended family members likely to have meaningful information about Aurora's ancestry were not asked about Indian ancestry:  paternal grandmother Patricia; paternal grandfather T.S.; paternal aunt Wendy S.; and paternal uncle S.S.  "In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child— regardless of whether the information ultimately shows the child is or is not an Indian child." (*In re Antonio R., supra,* 76 Cal.App.5th at p. 435.)  Accordingly, the order is conditionally affirmed and the matter remanded so that the Department can comply with its duties under ICWA and interview the four paternal extended family members regarding whether Aurora has any Indian ancestry.  (See *In re Rylei S., supra,* at pp. 324-327; *In re Antonio R., supra,* at pp. 435-437; *In re Y.W., supra,* 70 Cal.App.5th at pp. 556-559.)

## DISPOSITION

The juvenile court's section 366.3 order is conditionally affirmed.  We remand to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and California law, including but not limited to all reasonable efforts to interview paternal grandmother Patricia, paternal grandfather T.S., paternal aunt Wendy S., and paternal uncle S.S about the

27

possibility of Aurora's possible Indian ancestry and to submit a report of its interviews or efforts to conduct interviews to the juvenile court.  If the court finds Aurora is an Indian child, it shall make all necessary orders to ensure compliance with ICWA and related California law.  If not, the court's original section 366.3 order will remain in effect.

MARTINEZ, P. J.

We concur:

SEGAL, J.

FEUER, J.